Welch, J.
The allowance of the writ is resisted by coun< sel for defendant, on four several grounds:
1. It would be to “control the judicial discretion” of the common pleas.
2. The federal court, and not the state court, has the power to issue the writ.
8. All the defendants should have joined in the petition fox removal.
*381 4. The act of congress is unconstitutional and void.
By the constitution and laws of this state, the supreme court has the power to issue the writ of mandamus to “ any inferior tribunal .... to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; ” with the limitation, however, that “ although it may require the inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it can not control judicial discretion.” See S. & C. Stat. 1124, sec. 569; and sec. 2, art. 4, Ohio Const.
Would the issuance of a writ, as prayed for in this case, b¡e an attempt to “ control judicial discretion,” within the meaning of the law?' We are clear that it would not. To hold otherwise would be to relinquish all control over inferior judicial tribunals by mandamus, except where actual corruption is shown. If the “ act” sought to be compelled — the acceptance of surety and suspension of proceedings in the cause — falls within the limitation of “judicial discretion,” it is difficult to conceive of one that would not. Of course it is assumed that the court acted conscientiously, and, for tho purpose of deciding this question, it must be assumed that it acted erroneously. The court, then, erroneously but conscientiously, refused to relinquish jurisdiction in the case, and to allow it to be certified to the proper court. Is there no remedy ? Must the case remain, and be tried in a court not having jurisdiction, because the removal of it would be to interfere with the conscience and discretion of the judge ? It is one thing to compel a court to take jurisdiction, or to relinquish jurisdiction of a case, and it is quite another thing, having compelled the court to take jurisdiction, to dictate what judgment it shall render therein. It is the latter kind of interference that the law prohibits. We are not asked to control the judgment of the court, but the act of the court which is to follow its judgment. The one is strictly judicial, the other is to be regarded as ministerial. The judgment of the court has already been rendered, and no mandamus can reach or modify it. The ultimate act — of receiving or refusing *382 surety — which is to follow that judgment, must depend, not on what the judgment is, hut what it should have been. . It would be strange indeed if we have power to compel the proper court to take jurisdiction, and have not the power to compel the improper court to relinquish jurisdiction, or to do a necessary act in order to the exercise of jurisdiction by the proper court. The former power is conceded, and the latter follows as a necessary consequence. The one would be useless without the other. Both look to the same end — the adjudication of causes in the proper constitutional tribunals. To compel the court, when we have decided that it has no jurisdiction of an action, to do a “specific act” enjoined by law, in order to the relinquishment of its assumed jurisdiction, and the trial of the case by the proper tribunal, is not an interference with its judicial discretion within the meaning of the law.
It is objected, in the second place, that the United States circuit court, and not this court, is the proper tribunal to ■issue the writ of mandamus.
■. It is unnecessary to decide whether the circuit court has .that power. If it has, it does not follow that this court has not, or that we should not exercise the power. I know of no good reason, either on grounds of convenience, comity, or state policy, if the jurisdiction is concurrent, as we suppose it is, why it should be refused by the state court, and left to the exclusive action of the federal court. The power of this court would seem to be undeniable, from the plain reading of •the law referred to. The act sought to be compelled, is “ an act which the law enjoins as a duty resulting from office.” True, the law enjoining the act is an act of congress, and not a statute of Ohio; but it is nevertheless, if constitutional, a law of Ohio. Nay, if there is any conflict, the state law must yield; for, by express constitutional provision, the constitution of the United States, and laws made in pursuance of it, are the supreme law of the land, anything in the laws of the state to the contrary notwithstanding.
If, then, this law of congress — or rather the 5th section of *383 the law, which contains all the provisions reflecting upon the case in hand — is constitutional, and if the relator has conformed his case to its provisions, we have no discretion but to allow the writ, or disregard a plain duty enjoined by law.
Is the case brought within the requirements of the law? And is the law constitutional ?
It seems to be admitted that there is no want of conformity to the requirements of the act of congress, unless it be in the fact that all'the defendants did not join with the relator in his petition for the removal. It is claimed that all should have so joined, and that one can not alone remove the cause. The main authority relied upon in support of this position is Smith v. Rines et al., 2 Sum. 339. We admit that the question is not clear of difficulty. But there is a material difference between the case cited and the present case. In the former, the jurisdiction of the United States court depended on citizenship. Here it depends on the subject matter. It is to be observed also, that there were other conclusive reasons for refusing jurisdiction in the case cited, which rendered the decision of the question as to joinder unnecessary, and gave it somewhat the character of a mere dictum. To apply any such rule of construction to the act of 1863, would be to nullify its provisions. Nothing would be necessary in order to evade the law, under that construction of it, but for the plaintiff to join as co-defendants nominal parties, persons in his interest, or parties who could never be served with process, or induced to join in the petition for removal. We can not suppose that any such injustice, or element of weakness, was designed to be' engrafted upon the law by its authors. It would be an element of weakness, because it would utterly defeat the manifest object of the law. And it would be an element of injustice, because it would make the protection.and rights of parties acting under it to depend on the will of others, and on accident, and not on their own deserts. The word “ defendant,” in the law in question, is that upon which the doubt arises. It will bear either signification without violence. To understand it in a distributive or personal sense, is to carry *384 out the unmistakable objects of the law; while to give it the collective or party meaning would be to render the law ineffectual and useless. The justice of the case would seem to be, that each party should have the right, alone, to remove his cause to the proper constitutional court. And we see nothing in the language or the subject matter of the law to prevent us from giving it this construction. For, it will be observed, the suits specified are necessarily cases of torts, where the defendants may be severally or jointly sued, at the pleasure of the plaintiff.
, It seems to be claimed by counsel — or, at least, it was claimed by the judge below — that the allegations in the petition for removal should be proved, and that the statements in the original petition are. admitted, because they are not denied by the relator. It is sufficient to say that the petition for removal sets forth the facts, and is “ verified by affidavit,” and that that is a full compliance with the act of congress. The petition of the relator alone is to be looked to for the facts of the case, and its silence is no admission of the statements in the original petition.
The case, therefore, seems to be in all respects in conformity to the provisions of the act of congress.
It remains to inquire whether the 5th section of the act is constitutional. And we are much indebted to counsel on both sides for their labors in that branch of the case. By far the greater part of the argument for the defendant is for the purpose of showing that other parts of the act, and particularly the 4th section, are void, and that therefore the 5th section must be held void also. This seems to have been the main ground upon which the application for removal was refused by the court below. We think that all this argumentation can be answered by saying, that the 5th section stands independent of all the other provisions of the act, and is complete within itself.
The other provisions of the act are : for the suspension of the writ of habeas corpus; for the liberation of certain prisoners ; for writs of error and appeals in certain cases; for *385 the limitation of certain actions; and section 4, providing that the authority of the president shall he a good defense to actions for arrests, etc., during the rebellion. Now, strike- out all 'these provisions, and the 5th section will remain a complete and perfect act within itself. It would then be simply ' a law for the removal of a certain class of cases from a state to a federal court, with a complete description of the cases, the courts, and the modes and times of procedure, and without any reference whatever to extrinsic -provisions. Its validity depends in no sense upon the question, whether the order of the president is a good defense or a bad defense, or whether the writ tof habeas corpus can be suspended or not. It is in vain to say that “ congress intended the 4th and 5th sections to stand together,” and that therefore they must, fall together. Congress intended, all- the sections to “ stand together,” and yet it is admitted that some of them can stand alone.
We have, therefore, no concern with the 4th section. It relates to the- case, while the 5th relates to the court. The one provides a defense, and the other provides the means by which the proper court shall be authorized to, adjudge the validity of the defense, and the other questions in the case. The 4th section is for the court that shall try the case, and the 5th alone is for us. It will be for that court and not for us, to say, what are the powers of the commander-in-chief of the army and navy, in times of war, over the persons and property of the people; and what measures of necessity congress may lawfully enact for the safety of the country. It will be for that -court to say whether congress has the powers assumed in the enactment of the 4th section, to hold the president alone responsible for acts committed,, in time of war,, by subordinate military and executive officers acting under his commands — whether justice to the subaltern demands it, and whether the constitution permits it. And it will be for a jury, under the instruction of that court, to say whether the acts eamplained of here are justifiable.
But it is contended that the 5th section, in itself considered,. *386 is void, because its provisions are not within the constitutional' powers of congress. It is said, in the first place, that the - federal courts have no jurisdiction of the causes named; and, in the second place, if they have such jurisdiction, the cases are such as can be removed only after judgment.
The constitution of the United States merely establishes a judiciary department, and specifies, in general language, the “ causes ” and “ controversies ” of which it shall have jurisdiction. All the details of organization, forms, and procedure, are left to congress, to be adjusted under its general authority, “ to make all laws necessary to carry into execution the powers aforesaid.”
• Of some' of these causes and controversies the federal courts are given original jurisdiction. These are: cases affecting ambassadors, ministers, consuls, or states; the jurisdiction in each depending' on the character of the parties in interest.
Of the other causes and controversies specified, the federal ¡courts-were to have appellate jurisdiction. These are: cases ¡arising under the constitution, cases arising under laws of ,congress, cases arising under treaties, and admiralty or maritime cases — in each of which jurisdiction depends upon the mature of the subject matter in controversy; and cases where the United States, or citizens of different states, are parties, ¡and cases between citizens of a state and foreign citizens — in which jurisdiction depends- upon the character or citizenship ■of the parties. *
" Under this grant of authority, congress, at its first session, passed the judiciary act of September 24, 1789, and it is too late now to question' the constitutionality of any of its provisions. By that act provision is made, in the cases where appellate 'jurisdiction depends on the nature of the subject rhatter, for transferring them from a state court to a federal court, after judgment, by appeal or writ of error. In one class of cases only was provision made for the removal of causes before judgment, by petition, and that was one of those where jurisdiction depended on the citizenship of the parties, ■viz., where the controversy was between citizens of different *387 states. The constitutionality of this provision was established by repeated judicial decisions, which need not now be cited.
The law remained thus till 1833, when the act of March 2, 1833, called the “ force bill,” was passed. The provisions of the force bill, as to the removal of actions before judgment, are precisely similar to those of the act of 1863 in question. Both acts apply to causes where jurisdiction depends on the subject matter, and not on the parties. The only essential difference between them is, that the former relates to suits for acts done, or claimed to be done, under the revenue laws, and the latter to suits for acts done, or claimed to be done, under authority of the president during the rebellion. This is a difference, it will be observed, which does not at all affect the manner or time of their removal — as to whether it shall be by petition before judgment, or by appeal or writ of error after judgment — but regards solely the ultimate jurisdiction of the court, irrespective of the means by which, or the time when, it is to be acquired. Now, if the cases specified in the act of 1863 are cases of which the United States courts have jurisdiction — if they are cases arising under the constitution — and if the act of 1863 is void, then is the act of 1833 void also. It would seem, in the face of repeated decisions, and such a long acquiescence, that it is too late now to set up such a claim; and yet such would seem to be the argument of counsel. It seems to us that it ought now to be considered as settl°d that congress has the power to provide for the removal, before or after judgment, from the state courts, as well as from the inferior federal courts, of all causes of which- the federal courts have appellate jurisdiction. See 4 Wheat. R. 316; 6 id. 378; 1 id, 341. In the case last referred to — Martin v. Hunter— Judge Story, among other things, says :
... “It is manifest that the judicial power of the United States is, unavoidably in some cases, exclusive of all state authority, and in all others may be made so at the election of congress.
. . . “Yet to all these cases the judicial power, by the very terms of the constitution, is to extend. It can not extend by *388 original jurisdiction, if that was already rightfully and exclusively attached in the state courts, which, as has been already shown, may occur. It must therefore extend by appellate jurisdiction, or not at all. It would seem to follow that the appellate power of the United States must, in such cases, extend to state tribunals; and if in such eases, there is no reason why it should not equally attach upon all otheis within the purview of the constitution.
. . . “ Yet, if the construction contended for be correct,’* [that the appellate power conferred by the constitution, does not extend to cases originating in state courts and within their jurisdiction, but only to cases originating in the inferior federal courts], “it will follow that, as the plaintiff may always elect the state court, the defendant may be deprived of all the security which the constitution intended in aid of his rights. To obviate this difficulty, we are referred to the power which it is admitted congress possesses to remove suits from state courts to the national courts; and this forms the second ground upon which the argument we are considering has been attempted to be sustained.” .....
“The existence of this power of removal is familiar in courts acting according to the course of the common law, in criminal as well as civil cases; and it is exercised before as well as after judgment. But this is always deemed in both cases an exercise of appellate and not of original jurisdiction. If, then, the right of removal be included in the appellate jurisdiction, it is only because it is one mode of exercising that power; and as congress is not limited by the constitution to any particular mode, or time of exercising it, it may authorize a removal either before or after judgment. The time, the process, and the manner, must be subject to its absolute legislative control.”
To the same effect is Gordon v. Longest, 16 Pet. R. 97, and Kanouse v. Martin, 15 How. 198.
But are the cases specified in section five of the act of 1863 among those named in the constitution, as belonging to federal jurisdiction? If they are, they belong to the first class desig *389 aated — cases “ arising under the constitution.” If they are not, then there is of course no power to remove them, in any form or at any time, from the state to the federal courts.
The constitution vests in congress plenary war powers. Congress can begin, carry on, and terminate wars, and can suppress insurrections and rebellions, without any express limit as to time, means or manner. And the president is made the commander-in-chief of the land and naval forces; charged also, as president, with the duty of carrying into effect all war measures enacted by congress. There is no limitation placed upon this grant of the power to carry on war, except those contained in the laws of war; and these powers, in their final execution, are all placed in the hands of the president, either as chief executive officer of the government, or as generalissimo of the army and navy. If any questions are to arise as to their extent, or lawfulness, they will arise upon the president’s attempt to carry them into actual execution in time of war, either by himself or his subordinates. The questions must arise — or, it is enough to say, they may arise — when he comes finally to execute them upon the people of the country, by “ arrests, seizures, and imprisonments,” or by taking life.
If a party brings a suit against the president, or any one of his subordinates, for an arrest, imprisonment, or seizure, made in time of war, either by a military officer acting under his command, or as an executive officer carrying into effect a war measure of congress, do not questions at once arise, of the extent and lawfulness of the power exercised, and of the right to shield the subaltern acting under orders, and hold his superior alone responsible ? And are not these constitutional questions ? If so, then, the case is one “ arising under the constitution.” It is not only true, that a constitutional question would arise, but it is probable that the case would mainly consist of that question. Now, that is the precise description of cases specified in this act. The question involved in them is not only a constitutional question, but it is a constitutional question of great magnitude; not only because it is national in its character, interesting the people of the *390 country, at this present time, more generally, and more deeply than most other questions, but also because it relates to the exercise of a power upon which the country is dependent for its very existence. In times of war the country has nothing to depend upon for safety, nothing to save it from utter destruction, but these war powers, placed in the hands of congress and the president, and to be wielded by the president alone. The existence of an extraordinary power, to make arrests and seizures, and even to tahe life, in certain places, at certain times, and under certain circumstances of necessity, no one denies. There is no dispute as to the existence of the power. The controversy is merely as to the occasions and manner of its exercise, and as to the parties who should be held responsible for its abuse. In time of war, a military commander, whether he be the commander-in-chief, or one of his subordinates, must possess and exercise powers both over the persons and the property of citizens which do not exist in time of peace. Rut he possesses and exercises such powers, not in spite of the constitution and laws of the United States, or in derogation from their authority, hut in virtue thereof and in strict' subordination thereto. The general who moves his army over private property in the course of his operations in the field, or who impresses into the public service means of transportation, or subsistence, to enable him to act against the enemy, or who seizes persons within his lines as spies, or destroys supplies in immediate danger of falling into the hands of the enemy, uses authority unknown to the constitution and laws of the United States in time of peace; but not unknown to that constitution and those laws in time of war. The power to declare war, includes the power to use the customary and necessary means effectually to carry it on. As congress may institute a state of war, it may legislate into existence and place under executive control the means for its prosecution. And, in time of war, without any special legislation, not the commander-in-chiof only, but every commander of an expedition, or of a military post, is lawfully empowered by the con ■ stitution and laws of the United States to do whatever is *391 necessary, and is sanctioned by the laws of war, to accomplish the lawful objects of his command.
There is in war, of course, a line where what is necessary and lawful ends, and where what is unnecessary and unlawful begins. The president is responsible for the abuse of this power. He is responsible civilly and criminally, as well as politically. But amid the contrariety of opinions, what tribunal shall draw the line ? Shall the question, in the spirit of our constitution, as all other great national questions are, be left to the national judiciary, or shall it be left to the conflicting decisions of the courts of thirty-four states — some of them hostile, some of them loyal, and some of them quasi loyal states ? Equal to the-importance of the questions, is the importance of having them uniformly decided. There are, perhaps, no questions on which we differ more widely; and there is no reason for believing that justice to both parties would not be administered in the national courts, equally as in the courts of the state. The idea intimated, that this act is a mere device to raise the “ pretense ” of a constitutional question, so as to take the cases from the. state courts, is utterly inadmissible. We dismiss all thoughts of conflict between the states and national government in the matter, and look upon it as one in which we have a common and a national interest, to be settled in such way as shall he promotive of harmony, peace, and national prosperity. On the one hand, let the “ plottings of treason be suppressed ” by the exercise of constitutional powers, and on the other, let the rights of individuals be strictly protected. Let this be done under the decisions of the constitutional courts appointed for the purpose, where uniform rules may be established, that shall become binding upon all, and be acquiesced in by the community.
Upon the whole we are satisfied, that the act of accepting surety and suspending jurisdiction in the case, is one which the court below may be compelled by mandamus to perform; that this court has power to issue the writ; that it is not necessary the other defendants should join with the relator, *392 and that the fifth section of the act of 1863 is constitutional.
A peremptory writ of mandamus is, therefore, awarded.
Brinkerhoee, C.J., and Scott, Day, and White, JJ., concurred.